SAMUEL A. AND MARY E. ANDERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 28911-88
United States Tax Court
T.C. Memo 1993-607; 1993 Tax Ct. Memo LEXIS 622; 66 T.C.M. (CCH) 1677; December 21, 1993, Filed *622 For petitioners: Arnold C. Wegher. For respondent: Patricia Anne Golembiewski. PETERSON
PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioners' Federal income tax and additions to tax and increased interest attributable to the deficiencies as follows: Additions to Tax and Increased Interest
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6659
6661
6621(c)
1981
$ 1,138
$  57
[1]
$   341
--- To be determined
1982
2,619
131
[2]
786
--- To be determined
1983
4,269
213
[3]
1,281
--- To be determined
1984
5,539
277
[4]
1,662
$ 1,385
To be determined
After concessions, the issues for decision *623 are: (1) Whether petitioners are liable for additions to tax for negligence under section 6653(a)(1) and (2) for each of the years in issue; (2) whether petitioners are liable for the addition to tax under section 6661 for the taxable year 1984; and (3) whether petitioners are liable for increased interest under section 6621(c). ome of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners resided in Littleton, Colorado, at the time their petition was filed. In 1983, petitioner Samuel A. Anderson (Mr. Anderson) invested in the Gold Depository and Loan Co., Inc. (GD&L). GD&L purported to be in the business of promoting and selling marine dry cargo containers, which are cargo containers used to transport dry cargo from port-to-port on ocean traveling vessels. Mr. Anderson invested in GD&L by signing a Container Purchase and Lease Agreement (Agreement) with GD&L, whereby he purportedly purchased 56 marine dry cargo shipping containers. Under the Agreement, Mr. Anderson purported to purchase twenty-seven 40-foot cargo containers for $ 3,000 each, and twenty-nine 20-foot cargo containers for *624 $ 1,500 each, for a total purported investment of $ 124,500. Mr. Anderson paid $ 6,225 in cash under the Agreement, which amount represented 5 percent of the purchase price, with the 95-percent balance of the investment purportedly represented by a note in the amount of $ 118,275. In fact, Mr. Anderson did not sign a note or any other instrument evidencing indebtedness to GD&L or to any other entity for the $ 118,275 balance and never made any payments of interest or principal toward any such indebtedness. Under the Agreement, GD&L agreed to act as Mr. Anderson's nonexclusive agent for a period of 35 months, for the purpose of leasing the cargo containers to ships traveling to and from various United States ports. As compensation for this service Mr. Anderson agreed that GD&L was to receive an annual lease management fee in the amount of 15 percent of the income generated through the leasing of the cargo containers. On December 31, 1983, GD&L issued to Mr. Anderson an income and expense sheet showing the amount of rental income purportedly earned from the rental of the cargo containers during 1983. However, in fact, the information provided on the income and expense sheet was *625 fictitious, and, in fact, neither GD&L nor any GD&L agent or representative ever purchased or contracted to purchase any marine dry cargo containers for subsequent sale to Mr. Anderson, or leased any such containers for Mr. Anderson or on his behalf. Prior to investing in the GD&L cargo container program, Mr. Anderson had no experience in the marine dry cargo container industry. Moreover, prior to investing in GD&L, Mr. Anderson consulted no industry experts, read no industry publications, nor otherwise researched the marine dry cargo container industry. In fact, in deciding to invest in GD&L during the year in issue, Mr. Anderson relied heavily on the opinions of Mr. George T. Diachok, the registered investment representative who provided him with GD&L's promotional materials, and on the promotional materials themselves. Although Mr. Diachok was a GD&L investment salesman, he has never had experience working in the marine dry cargo container industry. On the Schedule C attached to their joint return filed for taxable year 1983, petitioners claimed a loss associated with Mr. Anderson's GD&L investment in the amount of $ 1,416, and on the Form 3468 attached to that return they *626 claimed an investment tax credit related to GD&L in the amount of $ 6,251. On the Schedule C attached to petitioners' joint return filed for taxable year 1984, petitioners claimed a loss associated with Mr. Anderson's GD&L investment in the amount of $ 1,595, as well as an investment tax credit (carryforward from taxable year 1983 GD&L credit) in the amount of $ 5,447. On their joint returns filed for the taxable years 1981 and 1982, petitioners claimed an investment tax credit (carryback from taxable year 1983 GD&L credit) in the respective amounts of $ 1,138 and $ 2,619. In the notice of deficiency issued to petitioners for the years in issue respondent disallowed the Schedule C losses claimed for the taxable years 1983 and 1984, and also disallowed entirely the investment tax credits for Mr. Anderson's investment in GD&L for each of the years in issue. At trial petitioners acknowledged that GD&L was a sham, and conceded that they are not entitled to the Schedule C losses or investment tax credits relating to Mr. Anderson's investment. We first address whether petitioners are liable for the determined additions to tax for negligence under section 6653(a)(1) and (2) for each *627 of the years in issue. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes a further addition to tax in the amount of 50 percent of the interest due on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Respondent's determination of negligence is presumed to be correct, and petitioners bear the burden of proving that the determination is erroneous. Rule 142(a); . Based on the record, we conclude that petitioners fail to satisfy their burden of proof, and, accordingly, we hold that they are liable for the additions to tax for negligence. In reaching this conclusion we reject Mr. Anderson's argument that he invested in GD&L based upon a good faith belief *628 that the cargo container program was a bona fide investment in which he could earn money for his retirement, and not just a means of obtaining tax benefits. We reject Mr. Anderson's position because the record clearly shows that the individuals and materials which he claims bolstered his confidence regarding the potential income earning success of a GD&L investment and convinced him to make the investment in fact refer almost exclusively to tax benefits GD&L investors may expect to reap. Specifically, the record shows that in investing in GD&L, Mr. Anderson relied heavily on the verbal opinion of Mr. Diachok, who in turn relied "especially heavy" on the written opinions of an accountant and an attorney that were contained in the GD&L promotional materials. In examining these opinions, we discern no analysis of any income earning potential for any GD&L investor, and, in fact, we note that both opinions expressly limit their analysis to the "significant Federal income tax effects" available to GD&L investors, including an analysis as to "whether investors would be able to receive the benefits of Federal tax credits and depreciation write-offs". It is clear that Mr. Diachok did not *629 engage in any meaningful investigation into GD&L for Mr. Anderson beyond summarizing for him the investment's promotional materials, and in view of Mr. Diachok's lack of knowledge and experience in the cargo container industry, we conclude that it was not reasonable for Mr. Anderson to rely so heavily on Mr. Diachok as an authority on the business prospects of the GD&L investment program. ; see . In further support of our opinion, we note that Mr. Anderson's personal accountant had reservations about Mr. Anderson investing in GD&L, expressly stating that he thought the tax aspects of GD&L's cargo container program were "flakey or overly aggressive", and that he thought Mr. Anderson "may have problems" by investing in GD&L. In the face of such clear concern, Mr. Anderson had a duty to make a meaningful investigation to ascertain the bona fide business prospects of investing in GD&L, and in the absence of such evidence in the record, we hold that respondent's determination of additions to tax under section 6653(a)(1) and (2) must be *630 sustained. We next address whether petitioners are liable for the determined addition to tax under section 6661 for their taxable year 1984. Section 6661 imposes an addition to tax equal to 25 percent of any underpayment of income tax attributable to a substantial understatement. An understatement is defined as the excess of the amount of tax required to be shown on the tax return over the amount of tax actually shown on the tax return as filed, minus any rebates. Sec. 6661(b)(2)(A). A substantial understatement is one that exceeds the greater of either 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1). The amount of the understatement may be reduced by an amount for which there was substantial authority for the treatment adopted by the taxpayers on their return. Sec. 6661(b)(2)(B)(i). However, such reduction is not available in the case of tax shelters unless the taxpayer reasonably believed that the claimed tax treatment was "more likely than not" the proper tax treatment. Sec. 6661(b)(2)(C)(i)(II). For this purpose, section 6661(b)(2)(C)(ii) defines a tax shelter as *631 any partnership or other arrangement whose principal purpose is the avoidance or evasion of Federal income tax. On the basis of the stipulation of facts and attached exhibits, and the remainder of the record in this case, we conclude that the GD&L marine cargo container program that Mr. Anderson invested in was a tax shelter. This conclusion is consistent with other cases in this Court that also have examined GD&L transactions, and petitioners in fact concede as much in this case. See ; . However, while conceding that the GD&L investment he entered into was a sham and that the cargo containers never existed, Mr. Anderson has not set forth any specific facts from which we can conclude that he reasonably believed that the tax treatment claimed on petitioners' return regarding Mr. Anderson's GD&L investment was more likely than not the proper tax treatment. In contrast, respondent has shown that Mr. Anderson was not knowledgeable about the container leasing industry prior to investing in GD&L, that Mr. Anderson did not make any meaningful effort *632 to investigate the activity prior to investing, and that, in fact, Mr. Anderson's "advisers" also failed to engage in sufficient factual and legal analysis to enable Mr. Anderson to reasonably believe that the tax treatment he claimed regarding his GD&L investment was "more likely than not proper". On this record, we sustain respondent's determination of the addition to tax under section 6661(a) for petitioners' taxable year 1984. ; Finally, we address whether petitioners are liable for increased interest under section 6621(c). Section 6621(c) provides for an interest rate of 120 percent of the adjusted rate established under section 6601 if there is a "substantial underpayment" (an underpayment exceeding $ 1,000) in any taxable year attributable to one or more "tax motivated transactions". The increased interest rate applies to interest accrued after December 31, 1984, even though the transaction was entered into prior to that date. , affd. without published *633 opinion . Since we have concluded on this record that the GD&L marine cargo container investment program was merely a sham, we hold that section 6621(c) is applicable, and respondent is sustained on this issue. Sec. 6621(c)(3)(A)(v). To reflect concessions, Decision will be entered under Rule 155. Footnotes
1. 50 percent of the interest on $ 1,138.↩
2. 50 percent of the interest on $ 2,619.↩
3. 50 percent of the interest on $ 4,269.↩
4. 50 percent of the interest on $ 5,539.↩